**LYNCH CARPENTER, LLP**
(Eddie) Jae K. Kim (SBN: 236805)
ekim@lcllp.com
Tiffine E. Malamphy (SBN 312239)
tiffine@lcllp.com
117 E Colorado Blvd, Ste 600
Pasadena, CA 91105-3712
Tel.:    (213) 723-0707
Fax:    (858) 313-1850

William B. Federman*
*Pro Hac Vice Forthcoming*
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Tel.:    (405) 235-1560
wbf@federmanlaw.com

*Counsel for Plaintiff and*
*Proposed Lead Counsel for the Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| CHARLENE RAMIREZ, individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>v.<br><br>CALIFORNIA PHYSICIANS' SERVICES d/b/a BLUE SHIELD OF CALIFORNIA,<br><br>  Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Charlene Ramirez, individually and on behalf of all others similarly situated, for his Class Action Complaint, bring this action against Defendant California Physicians' Services d/b/a Blue Shield of California ("Blue Shield") based on personal knowledge and the investigation of counsel and alleges as follows:

CLASS ACTION COMPLAINT

## I.    INTRODUCTION

1.    Between April 2021 and January 2024, Blue Shield shared Plaintiff's and the Class Members' personal identifiable information ("PII")[1] and private health information ("PHI") (collectively, with PII, "Private Information") with Google Analytics and Google Ads without Plaintiff's or the Class Members' knowledge (the "Data Breach").

2.    Blue Shield is a health insurance company that offers health plans to approximately six million people.

3.    Defendant owns and controls blueshieldca.com and related webpages ("Website") and also owns and controls a mobile app ("App") (collectively, "Website and App").

4.    Blue Shield's Website and App allow Plaintiff and Class Members to access a digital copy of their medical ID card; pay bills including premiums using secure payment options; file insurance claims and track their status; manage their healthcare needs including scheduling telehealth appointments, accessing their health plans; and navigating resources to find urgent care facilities; compare costs, and prepare for non-emergent medical needs.

5.    Due to the nature of the Website and App, Defendant knew its patients, like Plaintiff, would use the Website and App to communicate sensitive and personal private information in regards to their health care while utilizing Blue Shield to receive medical care and insurance, including information related to payment, insurance plan type, address, gender, family size, medical claim service dates and provider name, type, and location, among other data.

6.    Blue Shield used Google Analytics' services to internally track the website usage of its members to "improve the services" provided to its members. However, unbeknownst to its members, Google Analytics was sharing their Private Information with Google Ads without Plaintiff's or the Class Members' knowledge or approval.

7.    Plaintiff and members of the class are current or former patients of Blue Shield. In order to obtain Defendant's services, Defendant required Plaintiff and the Class Members to

---

[1] Personal identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

CLASS ACTION COMPLAINT

provide their PII, including their names, dates of birth, email addresses, addresses, Social Security numbers, financial account information, and other personal information. Defendant also required Plaintiff and the Class Member to provide their health insurance information and medical history. Defendant created additional PHI for each Class Member and saved it to its files, including medical records, doctor information, and other medical related documents. Defendant used a third-party vendor to store, maintain, and transmit Plaintiff's and the Class Members' Private Information.

8.    In carrying out its business, Defendant obtains, collects, uses, and derives a benefit from the Private Information of Plaintiff and the Class. As such, Defendant assumed non-delegable, legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion, and to ensure that its vendors did the same.

9.    On or around April 4, 2025, Defendant informed Plaintiff and the Class Members about the Data Breach. According to Defendant, Plaintiff's and the Class Members' Private Information was access and used by Google Ads, including their insurance plan name, type and group number, city, zip code, gender, family size, Blue Shield assigned identifiers on their online account, medical claim service date and service provider, patient name, patient financial responsibility, and "Find a Doctor" search criteria and results (location, plan name and type, and provider name and type).

10.    Google Ads used this information to conduct focused as campaigns targeted back at Plaintiff and the Class Members.

11.    This class action seeks to redress Defendant's unlawful, willful and wanton failure to protect the personal identifiable information of likely thousands of individuals that was exposed in a major data breach of Defendant's network in violation of its legal obligations.

12.    Defendant betrayed the trust of Plaintiff and the other Class Members by failing to properly safeguard and protect their personal identifiable information and allowing other entities to misuse their Private Information.

13.    Plaintiff brings this action individually and on behalf of the Class, seeking remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, injunctive relief, reasonable attorney fees and costs, and other remedies this Court deems proper.

CLASS ACTION COMPLAINT

## II.    THE PARTIES

14.    Plaintiff is a citizen of Whittier, California.

15.    Blue Shield is incorporated under California law with its principal place of business in Oakland, California.

16.    The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiff. Plaintiff will seek leave of court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

17.    All of Plaintiff's claims stated herein are asserted against Defendant and any of its owners, predecessors, successors, subsidiaries, agents and/or assigns.

## III.    JURISDICTION AND VENUE

18.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

19.    This Court has federal question jurisdiction under 28 U.S.C. § 1331 over Plaintiff's Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510–2523, claim.

20.    This Court may exercise supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367 because they arise out of the same case or controversy as Plaintiff's ECPA claim.

21.    This Court has diversity jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action involving more than 100 class members, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and many members of the class are citizens of states different from Defendant.

22.    This Court has personal jurisdiction over Defendant because its principal place of business is in this District, it regularly transacts business in this District, and many Class members reside in this District.

23.    Venue as to Defendant is proper in this judicial district under 28 U.S.C § 1391(b)(1) because Defendant's principal place of business is in this District and many of Defendant's acts complained of herein occurred within this District.

CLASS ACTION COMPLAINT

1    ## IV.    FACTUAL ALLEGATIONS

2    ### A.    BACKGROUND

3        24.    Defendant has multiple medical facilities across the state of California and services

4    thousands of patients each year.

5        25.    In order to provide medical services, Defendant requires Plaintiff's and Class

6    Members' Private Information, including their names, dates of birth, email addresses, physical

7    addresses, Social Security numbers, financial account information, health insurance information,

8    and medical history.

9        26.    Defendant collected, stored, and maintained the Private Information of Plaintiff and

10    the Class Members on its network. Defendant, however, failed to take reasonable and necessary

11    steps to ensure that its network was secure.

12        27.    By obtaining, collecting, and storing the Private Information of Plaintiff and Class

13    Members, Defendant assumed non-delegable legal and equitable duties and knew or should have

14    known that it was responsible for protecting the Private Information from disclosure. This includes

15    Defendant's duty to ensure that its vendor implemented reasonable and adequate security measures

16    prior to providing the vendor with Plaintiff's and the Class Member's highly sensitive information.

17        28.    Plaintiff and the Class Members did not have control over how Defendant stored

18    and maintained their Private Information or its choice of vendors. Rather, Plaintiff was at

19    Defendant's mercy, as Defendant had sole control and authority over its protection of Plaintiff's

20    and the Class Members' Private Information.

21        29.    Plaintiff and Class Members have taken reasonable steps to maintain the

22    confidentiality of their Private Information and relied on Defendant to keep their Private

23    Information confidential and securely maintained, to use this information for business purposes

24    only, and to make only authorized disclosures of this information.

25        30.    Plaintiff and other Members of the Class entrusted their Private Information to

26    Defendant.

27        31.    Plaintiff and Class Members relied on this sophisticated Defendant to keep their

28    PII/PHI confidential and securely maintained, to use for information for business purposes only,

and to only make authorized disclosures of this information. Plaintiff and Class Members demanded security to safeguard their Private Information.

32.     Defendant had a non-delegable duty to adopt reasonable measures to protect the Private Information of Plaintiff and the Class Members from involuntary disclosure to third parties, including its duty to ensure that all of its vendors adopted reasonable measures to protect the Private Information.

33.     Despite recognizing its duty to do so, on information and belief, Defendant failed to ensure that its vendor implemented reasonable cybersecurity safeguards or policies to protect its consumers' Private Information and trained its IT or data security employees to prevent, detect, and stop breaches of its systems. Rather, Defendant chose to work with a vendor that stored Plaintiff's and the Class Members' Private Information on an unsecure network, leaving their Private Information vulnerable for cybercriminals to take. As a result, Defendant left significant vulnerabilities in its security procedures for cybercriminals to exploit and gain access to patients' Private Information.

**B.    *THE DATA BREACH***

34.     Between April 2021 and January 2024, due to Defendant's failure to maintain an adequate security system, Google Ads gained access to and acquired Plaintiff's and Class Members' Private Information.

35.     Defendant negligently delayed in responding to the Data Breach and informing Plaintiff and the Class Members of the Data Breach.

36.     Defendant was notified of the Data Breach as early as February 11, 2025; however, Defendant delayed notifying the individuals until April 4, 2025.

37.     The Data Breach was expressly designed to gain access to and exfiltrate private and confidential data, including (among other things) the Private Information of patients like Plaintiff and Class Members.

38.     In its Notice of Data Incident, Defendant admitted to Google Ads unauthorized access and use of Plaintiff's and the class Members' information.

CLASS ACTION COMPLAINT

39.     Defendant was negligent and did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining for Plaintiff and Class Members, causing the exposure of Private Information for Plaintiff and Class Members.

40.     Because Defendant had a non-delegable duty to protect Plaintiff's and Class Members' Private Information, Defendant should have known through readily available and accessible information about potential threats for the unauthorized exfiltration and misuse of such information.

41.     Defendant breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to ensure that its vendor properly maintained and safeguarded its computer systems and data. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

    a.      Failing to ensure its vendor maintains an adequate data security system to reduce the risk of data breaches and cyber-attacks;

    b.      Failing to adequately protect patients' and customers' Private Information;

    c.      Failing to ensure its vendor properly monitors its own data security systems for existing intrusions;

    d.      Failing to ensure that its vendors with access to its computer systems and data employed reasonable security procedures;

    e.      Failing to train, ensure that its vendor trains employees in the proper handling of emails containing Private Information and maintain adequate email security practices;

    f.      Failing to ensure the confidentiality and integrity of electronic Private Information it created, received, maintained, and/or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

    g.      Failing to ensure that its vendor implements technical policies and procedures for electronic information systems that maintain electronic Private Information

to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

h.      Failing to ensure that its vendor implements policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. § 164.308(a)(1)(i);

i.      Failing to ensure that its vendor implements procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

j.      Failing to ensure that its vendor protects against reasonably anticipated threats or hazards to the security or integrity of electronic Private Information in violation of 45 C.F.R. § 164.306(a)(2);

k.      Failing to ensure that its vendor protects against reasonably anticipated uses or disclosures of electronic Private Information that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

l.      Failing to ensure its vendor complies with HIPAA security standard rules by its workforces in violation of 45 C.F.R. § 164.306(a)(4);

m.     Failing to ensure that its vendor trains all members of its workforces effectively on the policies and procedures regarding Private Information as necessary and appropriate for the members of its workforces to carry out their functions and to maintain security of Private Information, in violation of 45 C.F.R. § 164.530(b);

n.      Failing to ensure that its vendor renders the electronic Private Information it maintained unusable, unreadable, or indecipherable to unauthorized individuals, as it had not encrypted the electronic Private Information as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key" (45 CFR § 164.304's definition of "encryption");

o.      Failing to ensure that its vendor complies with FTC guidelines for cybersecurity, in violation of Section 5 of the FTC Act;

p.      Failing to ensure that its vendor adheres to industry standards for cybersecurity as discussed above; and

q.      Otherwise breaching its duties and obligations to protect Plaintiff's and Class Members' Private Information.

42.    Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information by allowing entities like Google Ads to access and misuse the information.

## C.   GOOGLE'S USE OF PRIVATE INFORMATION

43.    Many websites and apps use Google services to improve their contact and keep it free. By integrating their websites with Google, Google receives information about the site and the users on the site.

44.    Google then uses the information shared by sites and apps to deliver its services, maintain, and improve them, develop new services, measure the effectiveness of the ads, and personalize content and ads to the user. Google Ads further shares and profits from this type of Private Information.

45.    Google typically informs users if ad personalization is turned on. However, Defendant and Google both failed to inform Plaintiff and the Class Members that it was tracking their information.

## D.   DEFENDANT IS A HIPAA COVERED ENTITY

46.    Blue Shield is a HIPAA covered entity that provides healthcare and medical services.  As a regular and necessary part of its business, Blue Shield collects and custodies the highly sensitive Private Information of its patients and clients' patients. Blue Shield is required under federal and state law to maintain the strictest confidentiality of the patient's Private Information that it requires, receives, and collects, and Blue Shield is further required to maintain sufficient safeguards to protect that Private Information from being accessed by unauthorized third parties.

CLASS ACTION COMPLAINT

47.     As a HIPAA covered entity, Blue Shield is required to ensure that it will implement adequate safeguards to prevent unauthorized use or disclosure of Private Information, including by implementing requirements of the HIPAA Security Rule and to report any unauthorized use or disclosure of Private Information, including incidents that constitute breaches of unsecured Private Information as in the case of the Data Breach complained of herein.

48.     Due to the nature of Blue Shield's business, which includes providing a range of medical services, Blue Shield would be unable to engage in its regular business activities without collecting and aggregating Private Information that it knows and understands to be sensitive and confidential.

49.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Blue Shield assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' PII/PHI from unauthorized disclosure.

50.     Plaintiff and Class Members are current or former patients and/or customers of Defendant whose Private Information was maintained by Blue Shield, or who received health-related or other services from Blue Shield, and directly or indirectly entrusted Blue Shield with their Private Information.

51.     Plaintiff and the Class Members relied on Blue Shield to implement and follow adequate data security policies and protocols, to ensure that its vendor did so, to keep their Private Information confidential and securely maintained, to use such Private Information solely for business and health care purposes, and to prevent the unauthorized disclosures of the Private Information. Plaintiff and Class Members reasonably expected that Blue Shield would safeguard and keep their Private Information confidential.

52.     As described throughout this Complaint, Blue Shield did not reasonably protect, secure, or store Plaintiff's and Class Members' Private Information prior to, during, or after the Data Breach, but rather, enacted unreasonable data security measures that it knew or should have known were insufficient to reasonably protect the highly sensitive information Blue Shield

CLASS ACTION COMPLAINT

maintained. Consequently, cybercriminals circumvented Blue Shield's vendor's security measures, resulting in a significant data breach.

53.     As a HIPAA covered entity that collects, creates, and maintains significant volumes of Private Information, the targeted attack was a foreseeable risk of which Blue Shield was aware and knew it had a duty to guard against. It is well-known that healthcare providers such as Defendant, which collect and store the confidential and sensitive Private Information of thousands of individuals, are frequently targeted by cyberattacks. Further, cyberattacks are highly preventable through the implementation of reasonable and adequate cybersecurity safeguards, including proper employee cybersecurity training.

### E.  DEFENDANT'S CONDUCT VIOLATES HIPAA OBLIGATIONS TO SAFEGUARD PRIVATE INFORMATION

54.     Blue Shield is a covered entity under HIPAA (45 C.F.R. § 160.102) and is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

55.     HIPAA requires covered entities to protect against reasonably anticipated threats to the security of sensitive patient health information.

56.     Blue Shield is subject to the rules and regulations for safeguarding electronic forms of medical information pursuant to the Health Information Technology Act ("HITECH").[5] *See* 42 U.S.C. §17921, 45 C.F.R. § 160.103.

57.     HIPAA's Privacy Rule or *Standards for Privacy of Individually Identifiable Health Information* establishes national standards for the protection of health information that is kept or transferred in electronic form.

58.     Covered entities must implement safeguards to ensure the confidentiality, integrity, and availability of PHI. Safeguards must include physical, technical, and administrative components.

CLASS ACTION COMPLAINT

59.     The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400–414, also requires Defendant to provide notice of the Data Breach to each affected individual "without unreasonable delay and *in no case later than 60 days following discovery of the breach*."[2]

60.     Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. §§ 1301, *et seq.* These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling PII like the data Defendant left unguarded. The HHS subsequently promulgated multiple regulations under authority of the Administrative Simplification provisions of HIPAA. These rules include 45 C.F.R. § 164.306(a)(1-4); 45 C.F.R. § 164.312(a)(1); 45 C.F.R. § 164.308(a)(1)(i); 45 C.F.R. § 164.308(a)(1)(ii)(D), and 45 C.F.R. § 164.530(b).

61.     A data breach, such as the one Defendant experienced, is considered a breach under the HIPAA Rules because there is an access of PHI not permitted under the HIPAA Privacy Rule. A breach under the HIPAA Rules is defined as:

> "...the acquisition, access, use, or disclosure of PHI in a manner not permitted under the [HIPAA Privacy Rule] which compromises the security or privacy of the PHI." *See* 45 C.F.R. 164.40.

62.     The Data Breach resulted from a combination of insufficiencies that demonstrate Blue Shield failed to comply with safeguards mandated by HIPAA regulations.

**F.    DEFENDANT FAILS TO COMPLY WITH INDUSTRY STANDARDS**

63.     As shown above, experts studying cybersecurity routinely identify healthcare providers and partners as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

64.     Several best practices have been identified that, at a minimum, should be implemented by healthcare providers like Defendant, including but not limited to; educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data.

---

[2]    https://www.hhs.gov/hipaa/for-professionals/breach-notification/index.html   (last   visited March 18, 2024).

CLASS ACTION COMPLAINT

65.    Other best cybersecurity practices that are standard in the healthcare industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

66.    Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

67.    These foregoing frameworks are existing and applicable industry standards in the healthcare industry, and Defendant failed to comply and ensure that its vendor complied with these accepted standards, thereby opening the door to the cyber incident and causing the Data Breach.

## G.    DEFENDANT FAILED TO ADHERE TO FTC GUIDELINES

68.    According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of Private Information.

69.    The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[3] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[4]

---

[3] 17 C.F.R. § 248.201 (2013).

[4] *Id.*

CLASS ACTION COMPLAINT

70.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

a.     Protect the sensitive consumer information that they keep;

b.     Properly dispose of PII that is no longer needed;

c.     Encrypt information stored on computer networks;

d.     Understand their network's vulnerabilities; and

e.     Implement policies to correct security problems.

71.     The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

72.     The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

73.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

74.     Defendant's negligence and failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and the Class's Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

**H.     *PLAINTIFF'S EXPERIENCE***

75.     Plaintiff was a patient at one of Blue Shield's locations.

76.     In order to receive services from Blue Shield, Plaintiff provided Blue Shield with his Private Information, including his name, date of birth, Social Security number, email address,

CLASS ACTION COMPLAINT

physical address, phone number, financial account information, and medical insurance information. Blue Shield accepted and stored this Private Information in the regular course of business with a third-party vendor. Blue Shield then created and stored additional PHI, including medical records for Plaintiff, with a third-party vendor.

77.     As a result of the Data Breach, Plaintiff's Private Information was misused without his consent.

## V.    CLASS ACTION ALLEGATIONS

78.     Plaintiff brings this nationwide class action on behalf of himself and on behalf of all others similarly situated pursuant to Fed. R. Civ. P. 23.

79.     The Class that Plaintiff seeks to represent is defined as follows:

> All individuals whose Private Information may have been accessed and/or acquired in the Data Breach.

80.     Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; Google Ads, its parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

81.     Plaintiff reserves the right to modify or amend the definition of the proposed class before the Court determines whether certification is appropriate.

82.     **Numerosity:** The Class is so numerous that joinder of all members is impracticable. Defendant services over a hundred thousand patients each year. The Class contains at least hundreds, if not thousands of people.

83.     **Commonality:** Questions of law and fact common to the Class exist and predominate over any questions affecting only individual Class Members. These include:

CLASS ACTION COMPLAINT

a.     Whether Defendant had a non-delegable duty to protect the Private Information of Plaintiff and the Class Members;

b.     Whether and to what extent Defendant had a duty to protect the Private Information of Plaintiff and Class Members;

c.     Whether Defendant had duties not to disclose the Private Information of Plaintiff and Class Members to unauthorized third parties;

d.     Whether Defendant had duties not to use the Private Information of Plaintiff and Class Members for non-business purposes;

e.     Whether Defendant failed to adequately safeguard the Private Information of Plaintiff and Class Members;

f.     When Defendant actually learned of the Data Breach;

g.     Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their Private Information had been compromised;

h.     Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their Private Information had been compromised;

i.     Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

j.     Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

k.     Whether Defendant engaged in unfair, unlawful, or deceptive practice by failing to safeguard the Private Information of Plaintiff and Class Members;

l.     Whether Plaintiff and Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendant's wrongful conduct;

m.     Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct; and

n.     Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

CLASS ACTION COMPLAINT

84.    **Typicality:** Plaintiff's claims are typical of those of other Class Members because all had their PII/PHI compromised as a result of the Data Breach, due to Defendant's misfeasance.

85.    **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to, and affect, Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

86.    **Adequacy:** Plaintiff will fairly and adequately represent and protect the interests of Class Members in that he has no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

87.    **Superiority and Manageability:** The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

88.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant would

necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

89. The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

90. Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

91. Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the Private Information of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

92. Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to Class Members as a whole is appropriate.

93. Likewise, particular issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

    a. Whether Defendant owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

    b. Whether Defendant breached a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

CLASS ACTION COMPLAINT

c.      Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

d.      Whether Defendant adequately and accurately informed Plaintiff and Class Members that their Private Information had been compromised;

e.      Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

f.      Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the Private Information of Plaintiff and Class Members; and

g.      Whether Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

## VI.    CAUSES OF ACTION
### COUNT I – NEGLIGENCE
**(On Behalf of Plaintiff and the Class)**

94.      Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

95.      Defendant solicited, gathered, and stored Plaintiff's and the Class's Private Information as part of the operation of its business.

96.      Upon accepting and storing the Private Information of Plaintiff and Class Members, Defendant undertook and owed a non-delegable duty to Plaintiff and Class Members to exercise reasonable care to secure and safeguard that information and to use secure methods to do so.

97.      Defendant had full knowledge of the sensitivity of the Private Information, the types of harm that Plaintiff and Class members could and would suffer if the Private Information was wrongfully disclosed, and the importance of adequate security.

98.      Plaintiff and Class members were the foreseeable victims of any inadequate safety and security practices. Plaintiff and the Class members had no ability to protect their Private Information that was in Defendant's possession. As such, a special relationship existed between Defendant and Plaintiff and the Class.

CLASS ACTION COMPLAINT

99.     Defendant was well aware of the fact that cyber criminals routinely target large corporations through cyberattacks in an attempt to steal sensitive Private Information.

100.     Defendant owed Plaintiff and the Class members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and the Class when obtaining, storing, using, and managing personal information, including taking action to reasonably safeguard such data.

101.     Defendant's duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures also have recognized the existence of a specific duty to reasonably safeguard personal information.

102.     Defendant had duties to protect and safeguard the Private Information of Plaintiff and the Class from being vulnerable to cyberattacks by taking common-sense precautions when dealing with sensitive Private Information. Additional duties that Defendant owed Plaintiff and the Class include:

a.     To exercise reasonable care in designing, implementing, maintaining, monitoring, and testing Defendant's networks, systems, protocols, policies, procedures and practices to ensure that Plaintiff's and Class Members' Private Information was adequately secured from impermissible access, viewing, release, disclosure, and publication;

b.     To protect Plaintiff's and Class Members' Private Information in its possession by using reasonable and adequate security procedures and systems;

c.     To implement processes to quickly detect a data breach, security incident, or intrusion involving their networks and servers;

d.     To promptly notify Plaintiff and Class Members of any data breach, security incident, or intrusion that affected or may have affected their Private Information; and

e.     To ensure that its vendors do the same.

CLASS ACTION COMPLAINT

103.    Defendant was the only one who could ensure that its vendor's systems and protocols were sufficient to protect the Private Information that Plaintiff and the Class had entrusted to it.

104.    Defendant breached its duties of care by failing to adequately protect Plaintiff's and Class Members' Private Information. Defendant breached its duties by, among other things:

      a.    Failing to exercise reasonable care in obtaining, retaining securing, safeguarding, deleting, and protecting the Private Information in its possession;

      b.    Failing to protect the Private Information in its possession using reasonable and adequate security procedures and systems;

      c.    Failing to adequately train its employees to not store Private Information longer than absolutely necessary;

      d.    Failing to consistently enforce security policies aimed at protecting Plaintiff's and the Class's Private Information;

      e.    Failing to implement processes to quickly detect data breaches, security incidents, or intrusions; and

      f.    Failing to ensure that its vendor did such.

105.    Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

106.    As a proximate and foreseeable result of Defendant's negligent and/or grossly negligent conduct, Plaintiff and the Class have suffered damages and are at imminent risk of additional harms and damages.

107.    Though Defendant's acts and omissions described herein, including but not limited to Defendant's failure to protect the Private Information of Plaintiff and Class Members from being stolen and misused, Defendant unlawfully breached its duty to use reasonable care to adequately protect and secure the Private Information of Plaintiff and Class Members while it was within Defendant's possession and control.

108.    There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and Class Members and the harm,

CLASS ACTION COMPLAINT

or risk of imminent harm, suffered by Plaintiff and the Class. The Private Information of Plaintiff and Class Members was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

109.    Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its patients, which is recognized by laws and regulations including but not limited to HIPAA, the FTC Act, and common law. Defendant was in a superior position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

110.    Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(1). Some or all of the medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

111.    Additionally, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

112.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and Class Members.

113.    Defendant's violation of Section 5 of the FTC Act constitutes negligence.

114.    Plaintiff and Class Members are within the class of persons that the FTC Act was intended to protect.

CLASS ACTION COMPLAINT

115.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of its failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and Class Members.

116.    Defendant's duty to act reasonably in collecting, storing, and maintaining the Private Information, and to use reasonable care in protecting such information arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information that it either affirmatively acquires, maintains, or stores. Industry standards require Defendant to exercise reasonable care with respect to Plaintiff and Class Members by implementing reasonable data security measures that do not create a foreseeable risk of harm to Plaintiff and Class Members. Industry best practices put the onus of adequate cybersecurity on the entity most capable of preventing a data breach. In this case, Defendant was the only entity that could adequately protect the data that that it solicited, collected, and stored.

117.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and continuing consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information of Plaintiff and Class Members; and (viii) present and continuing costs in terms of time, effort, and money that has been and will be expended to prevent, detect, contest, and repair the impact of the Private

Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

118.     As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

119.     Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

120.     As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members are entitled to recover actual, consequential, and nominal damages.

**COUNT II**
**BREACH OF IMPLIED CONTRACT**
**(On behalf of Plaintiff and the Class)**

121.     Plaintiff incorporates by reference the forgoing paragraphs as though fully set forth herein.

122.     Plaintiff and Class Members entered into implied contracts with Defendant under which Defendant agreed to safeguard and protect such information and to timely and accurately notify Plaintiff and Class Members that their information had been breached and compromised.

123.     Plaintiff and Class Members were required to deliver, and did deliver, their Private Information to Defendant as part of the process of obtaining medical services provided by Defendant. Plaintiff and Class Members paid money, or money was paid on their behalf, to Defendant in exchange for services.

124.     Defendant solicited, offered, and invited Class Members to provide their Private Information as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

CLASS ACTION COMPLAINT

125.    Defendant accepted possession of Plaintiff's and Class Members' Private Information for the purpose of providing services to Plaintiff and Class Members.

126.    When Plaintiff and Class Members paid money and provided their Private Information to their healthcare providers, either directly or indirectly, in the exchange for goods and services, they entered into implied contracts with their healthcare providers and their business partners, including Defendant, and intended and understood that Private Information would be adequately safeguarded as part of that service.

127.    Plaintiff and Class Members entered into implied contracts with Defendant under which Defendant agreed to safeguard and protect such Private Information and to timely and accurately notify Plaintiff and Class Members that their information had been breached and compromised.

128.    In accepting such information and payment for services, Plaintiff and the other Class Members entered into an implied contract with Defendant whereby Defendant became obligated to reasonably safeguard Plaintiff's and the other Class Members' Private Information.

129.    In delivering their Private Information to Defendant and paying for healthcare services, Plaintiff and Class Members intended and understood that Defendant would adequately safeguard the data as part of that service.

130.    The implied promise of confidentiality includes consideration beyond those pre-existing general duties owed under HIPAA or other state of federal regulations. The additional consideration included implied promises to take adequate steps to comply with specific industry data security standards and FTC guidelines on data security.

131.    The implied promises include but are not limited to: (1) taking steps to ensure that any agents who are granted access to Private Information also protect the confidentiality of that data; (2) taking steps to ensure that the information that is placed in the control of its agents is restricted and limited to achieve an authorized medical purpose; (3) restricting access to qualified and trained agents; (4) designing and implementing appropriate retention policies to protect the information against criminal data breaches; (5) applying or requiring proper encryption;

CLASS ACTION COMPLAINT

(6) multifactor authentication for access; and (7) other steps to protect against foreseeable data breaches.

132.    Defendant's implied promises to safeguard Plaintiff's and Class Members' Private Information are evidenced by the information contained on its website. On its website, Blue Shield specifically states that it is "required by applicable federal and state laws to maintain the privacy of [patients'] health information."[5]

133.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of such an implied contract.

134.    Had Defendant disclosed to Plaintiff and Class Members that it did not have adequate computer systems and security practices to secure sensitive data, Plaintiff and the other Class Members would not have provided their Private Information to Defendant.

135.    Defendant recognized that Plaintiff's and Class Members' Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiff and the other Class Members.

136.    Plaintiff and the other Class Members fully performed their obligations under the implied contracts with Defendant.

137.    Defendant breached the implied contract with Plaintiff and the other Class Members by failing to take reasonable measures to safeguard their Private Information as described herein.

138.    As a direct and proximate result of Defendant's conduct, Plaintiff and the other Class Members suffered and will continue to suffer damages in an amount to be proven at trial, or alternatively, nominal damages.

## <u>COUNT III – BREACH OF FIDUCIARY DUTY</u>
### (On Behalf of Plaintiff and the Class)

139.    Plaintiff incorporates by reference the forgoing paragraphs as though fully set forth herein.

---

[5] https://www.thesmiledesign.com/patient-information/hipaa-notice-of-privacy-practices/

CLASS ACTION COMPLAINT

140.    A relationship existed between Plaintiff and Class Members and Defendant in which Plaintiff and the Class put their trust in Defendant to protect their Private Information. Defendant accepted this duty and obligation when it received Plaintiff's and the Class Members' Private Information.

141.    Plaintiff and the Class Members entrusted their Private Information to Defendant on the premise and with the understanding that Defendant would safeguard their information, use their Private Information for business purposes only, and refrain from disclosing their Private Information to unauthorized third parties.

142.    Defendant knew or should have known that the failure to exercise due care in the collecting, storing, and using of individual's Private Information involved an unreasonable risk of harm to Plaintiff and the Class, including harm that foreseeably could occur through the criminal acts of a third party.

143.    Defendant's fiduciary duty required it to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that Plaintiff's and the Class's information in Defendant's possession was adequately secured and protected.

144.    Defendant also had a fiduciary duty to have procedures in place to detect and prevent improper access and misuse of Plaintiff's and the Class's Private Information. Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Defendant was entrusted with Plaintiff and the Class's Private Information.

145.    Defendant breached its fiduciary duty that it owed Plaintiff and the Class by failing to act in good faith, fairness, and honesty; by failing to act with the highest and finest loyalty; and by failing to protect the Private Information of Plaintiff and the Class Members.

146.    Defendant's breach of fiduciary duties was a legal cause of damages to Plaintiff and the Class.

147.    But for Defendant's breach of fiduciary duty, the damage to Plaintiff and the Class would not have occurred, and the Data Breach contributed substantially to producing the damage to Plaintiff and the Class.

148.    As a direct and proximate result of Defendant's breach of fiduciary duty, Plaintiff and the Class are entitled to actual, consequential, and nominal damages and injunctive relief, with amounts to be determined at trial.

**COUNT IV – DECLARATORY JUDGMENT**
**(On Behalf of Plaintiff and the Class)**

149.    Plaintiff incorporates by reference the forgoing paragraphs as though fully set forth herein.

150.    Under the Declaratory Judgment Act, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Further, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

151.    An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and the Class's Private Information and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff and the Class from further data breaches that compromise their Private Information. Plaintiff alleges that Defendant's data security measures remain inadequate. Defendant publicly denies these allegations. Furthermore, Plaintiff continues to suffer injury as a result of the compromise of his Private Information and remains at imminent risk that further compromises of their Private Information will occur in the future. It is unknown what specific measures and changes Defendant has undertaken in response to the Data Breach.

152.    Plaintiff and the Class have an ongoing, actionable dispute arising out of Defendant's inadequate security measures, including (i) Defendant's failure to encrypt Plaintiff's and the Class's Private Information, including Social Security numbers, while storing it in an Internet-accessible environment, and (ii) Defendant's failure to delete Private Information it has no reasonable need to maintain in an Internet-accessible environment, including the Social Security numbers of Plaintiff and the Class.

CLASS ACTION COMPLAINT

153.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.    Defendant owes a legal duty to secure the Private Information of Plaintiff and the Class;

b.    Defendant continues to breach this legal duty by failing to employ reasonable measures to secure consumers' Private Information; and

c.    Defendant's ongoing breaches of its legal duty continue to cause Plaintiff and the Class harm.

154.    This Court also should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry and government regulatory standards to protect consumers' Private Information. Specifically, this injunction should, among other things, direct Defendant to:

a.    Engage third party auditors, consistent with industry standards, to test its systems for weakness and upgrade any such weakness found;

b.    Audit, test, and train its data security personnel regarding any new or modified procedures and how to respond to a data breach;

c.    Regularly test its systems for security vulnerabilities, consistent with industry standards; and

d.    Implement an education and training program for appropriate employees regarding cybersecurity.

155.    If an injunction is not issued, Plaintiff and Class Members will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Defendant. The risk of another such breach is real, immediate, and substantial. If another breach at Defendant occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

156.    The hardship to Plaintiff and Class Members if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued. Plaintiff will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendant of complying with an

CLASS ACTION COMPLAINT

injuction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

157.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at Defendant, thus eliminating the additional injuries that would result to Plaintiff and others whose confidential information would be further compromised.

## COUNT IV – ECPA
### (On Behalf of Plaintiff and the Class)

158.    Plaintiff incorporates by reference the forgoing paragraphs as though fully set forth herein.

159.    The Electronic Communications Privacy Act of 1986 ("ECPA"), prohibits the intentional interception, use, or disclosure of any wire, oral, or electronic communication and prohibits any person from intentionally intercepting, endeavoring to intercept, or procuring "any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a).

160.    18 U.S.C. § 2520(a) provides a private right of action to any person whose wire or electronic communications are intercepted, disclosed, or intentionally used in violation of Chapter 119.

161.    The transmissions of Plaintiff's Private Information via Defendant's Website and App is a "communication" under 18 U.S.C. § 2510(12).

162.    The transmission of Private Information between Plaintiff and Class Members and Defendant via its Website and App are "electronic communications" under 18 U.S.C. § 2510(2) because they are "transfer[s] of signs, signals, writing,…data, [and] intelligence of [some] nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects interstate commerce."

163.    18 U.S.C. § 2510(8) provides that "contents," when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication.

CLASS ACTION COMPLAINT

164.    18 U.S.C. § 2510(4) provides that "intercept" means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device.

165.    18 U.S.C. § 2510(5) provides that "electronic, mechanical, or other device" means "any device or apparatus which can be used to intercept a wire, oral, or electronic communication," other than certain devices not relevant here.

166.    When Plaintiff and Class Members interacted with Defendant's Website and App, Defendant, through the Tracking Tools embedded and operating on its Website and App, contemporaneously and intentionally disclosed, used, and redirected, and endeavored to disclose, use, and redirect, the contents of Plaintiff's and Class Members' electronic communications to third parties, including Google, without authorization or consent, and knowing or having reason to know that the electronic communications were obtained in violation of 18 U.S.C. § 2511(1)(c)-(d).

167.    Defendant's intercepted communications include, but are not limited to, the contents of communications to/from Plaintiff and Class Members regarding PII and PHI.

168.    By intentionally disclosing or endeavoring to disclose the electronic communications of Plaintiff and Class Members to Facebook, Google, and Microsoft, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendant violated 18 U.S.C. § 2511(1)(c)-(d).

169.    Defendant intentionally used the wire or electronic communications to increase its profit margins, and it specifically used the Tracking Tools to track and utilize Plaintiff's and Class Members' Private Information for financial gain.

170.    Defendant was not acting under color of law to intercept Plaintiff's and Class Members' wire or electronic communication.

171.    Plaintiff and Class Members did not authorize Defendant to acquire the content(s) of their communications via the Tracking Tools for purposes of invading their privacy.

CLASS ACTION COMPLAINT

172.    Any purported consent Defendant received from Plaintiff and Class Members was not valid.

173.    Defendant intentionally intercepted the contents of Plaintiff's and Class Members' electronic communications for the purpose of committing a tortious or criminal act in violation of the Constitution or laws of the United States or of any State – namely, violations of HIPAA, breaches of confidence, invasion of privacy, among others.

174.    As a result of Defendant's violation of the ECPA, Plaintiff and Class Members are entitled to all damages available under 18 U.S.C. § 2520, including statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000, equitable or declaratory relief, compensatory and punitive damages, and attorney's fees and costs.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for judgment against Defendant as follows:

1.    An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Class requested herein;

2.    A judgment in favor of Plaintiff and the Class awarding them appropriate monetary relief, including actual and statutory damages, punitive damages, attorney fees, expenses, costs, and such other and further relief as is just and proper;

3.    An order providing injunctive and other equitable relief as necessary to protect the interests of the Class and the general public as requested herein, including, but not limited to:

    i.    Ordering that Defendant engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

    ii.    Ordering that Defendant engage third-party security auditors and internal personnel to run automated security monitoring;

CLASS ACTION COMPLAINT

iii.     Ordering that Defendant audit, test, and train its security personnel regarding any new or modified procedures;

iv.     Ordering that Defendant segment customer data by, among other things, creating firewalls and access controls so that if one area of Defendant's systems is compromised, hackers cannot gain access to other portions of Defendant's systems;

v.     Ordering that Defendant purge, delete, and destroy in a reasonably secure manner customer data not necessary for their provisions of services;

vi.     Ordering that Defendant conduct regular database scanning and securing checks; and

vii.     Ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

4.     An order requiring Defendant to pay the costs involved in notifying the Class members about the judgment and administering the claims process;

5.     A judgment in favor of Plaintiff and the Class awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs and expenses as allowable by law; and

6.     An award of such other and further relief as this Court may deem just and proper.

## VIII.   DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues to triable.

Respectfully submitted,

Dated: May 14, 2025                    **LYNCH CARPENTER, LLP**

By:   */s/ (Eddie) Jae K. Kim*
(Eddie) Jae K. Kim (SBN 236805)
ekim@lcllp.com
Tiffine E. Malamphy (SBN 312239)
tiffine@lcllp.com
117 E Colorado Blvd, Ste 600
Pasadena, CA 91105-3712
Tel.:    (213) 723-0707
Fax:    (858) 313-1850

CLASS ACTION COMPLAINT

William B. Federman*
Jessica A. Wilkes*
*Pro Hac Vice Forthcoming*
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave
Oklahoma City, OK 73120
Tel.:    (405) 235-1560
wbf@federmanlaw.com
jaw@federmanlaw.com

*Attorneys for Plaintiff and*
*Proposed Lead Counsel for the Class*

CLASS ACTION COMPLAINT